UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 17-62064-CIV-MORENO

DAVID ABELLARD, JR.,

    Plaintiff,

vs.

OKLAHOMA STUDENT LOAN
AUTHORITY,

    Defendant.
_____/

## ORDER GRANTING MOTION TO DISMISS

David Abellard, Jr. brought this action against the Oklahoma Student Loan Authority, alleging that it repeatedly called his cellular telephone "in a campaign designed to apply maximum psychological stress with the aim of pressuring him into paying [student loan debt]." (Compl. ¶ 20.) Abellard contends that the Loan Authority's conduct violated the Telephone Consumer Protection Act,[1] Fair debt Collection Practices Act,[2] and Florida Consumer Collection Practices Act.[3] The Loan Authority subsequently filed a motion to dismiss the Complaint with prejudice, citing both its sovereign immunity and Abellard's failure to state a claim upon which relief can be granted.

The Court agrees that the Loan Authority is immune from suit in federal court and therefore declines to address whether Abellard has stated a valid claim for relief. Because Abellard cannot maintain this action in federal court, it is ADJUDGED that Defendant's motion is GRANTED and the case is DISMISSED.

---

[1] 47 U.S.C. § 227 *et seq.*
[2] 15 U.S.C. § 1692 *et seq.*
[3] Florida Statutes §§ 559.55–559.785.

## I. Background

### A. David Abellard

David Abellard resides in the Southern District of Florida and has a cellular telephone number containing the area code for Palm Beach County, Florida. Abellard allegedly owes debt on a loan serviced by the Oklahoma Student Loan Authority.

### B. The Oklahoma Student Loan Authority

The Oklahoma Student Loan Authority is a state agency charged with "providing student loan funds pursuant to requirements of any appropriate federal agency to qualified persons . . . ." Okla. Stat. tit. 70, § 695.3. Oklahoma's legislature created the Loan Authority in 1972 by authorizing the Governor "to accept beneficial interest on behalf of the State of Oklahoma in an express trust . . . ." and "to certify that the State of Oklahoma agrees and undertakes to carry out the provisions of [Oklahoma Student Loan Act." *Id.* Five trustees—appointed for five-year terms by the Governor with the advice and consent of the Senate—share responsibility for overseeing the Loan Authority's activities. Okla. Stat. tit. 70, § 695.4. The Governor may remove these trustees for cause. *Id.* Additionally, all bonds issued by the Loan Authority must be reviewed approved by the Oklahoma's Attorney General. Okla. Stat. tit. 70, § 695.9. And the Loan Authority must submit its budget to the State's Governor, Senate, and House of Representatives, and must obtain and annual audit by the State Auditor and Inspector or by a certified public accountant of its designation. Okla. Stat. tit. 70, § 695.21.

### C. Statement of Facts

Abellard claims that representatives of the Oklahoma Student Loan Authority tried to collect student loan debt from him "by using an automatic telephone dialing system to place numerous telephone calls to [his] cellular telephone." (Compl. ¶ 16.) He received these debt collection calls from various phone numbers, sometimes getting multiple calls on the same day or on consecutive days. Specifically, Abellard states that the Loan Authority called him on: (i)

2

September 14, 2016 at 3:26 p.m.; (ii) September 16, 2016 at 3:30 p.m.; (iii) October 5, 2016 at 12:01 p.m.; (iv) October 15, 2016 at 10:55 a.m.; and (v) October 18, 2016 at 11:20 a.m.

According to Abellard, the Loan Authority employed prerecorded voice messages to pressure him into paying the debt. With each call, he heard "an automated, machine operated voice message or a noticeable period of 'dead air' while the caller's auto-dialing system attempted to connect [him] to a live telephone employee." (Compl. ¶ 17.) Abellard contends that these calls damaged him, stating, "[his] privacy was improperly invaded, his peace was disturbed, he was distracted, his cellular telephone's battery and memory were taxed, his cellular telephone line was tied-up, and he was forced to spend precious time and mental energy tending to unwanted calls." (Compl. ¶ 23.)

## II. Discussion

### D. Motion to Dismiss Standard

"To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions," instead plaintiffs must "allege some specific factual basis for those conclusions or face dismissal of their claims." *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1263 (11th Cir. 2004). When ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true. *See St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 953 (11th Cir. 1986). This tenet, however, does not apply to legal conclusions. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Moreover, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 1950. Those "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). In short, the complaint must not merely allege a misconduct, but must demonstrate that the pleader is entitled to relief. *See Iqbal*, 129 S. Ct. at 1950.

### E. The Eleventh Amendment

The Eleventh Amendment of the United States Constitution protects a State from being sued in federal court without the State's consent. *See* U.S. Const. amend. XI. Therefore, parties can sue a non-consenting State only in the State's own courts. This immunity applies with equal force to lawsuits brought against an "arm of the State"—*e.g.*, "public entities acting as state agents or instrumentalities." *Manders v. Lee*, 338 F.3d 1304, 1308–09 (11th Cir. 2003). To determine whether a defendant qualifies as an "arm of the State", courts in the Eleventh Circuit consider the following four factors: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." *Id.* at 1309. "The pertinent inquiry is not into the nature of [an entity's] status in the abstract, but its function or role in a particular context." *Shands Teaching Hosp. & Clinics v. Beech St. Corp.*, 208 F.3d 1308, 1311 (11th Cir. 2000).

### F. Application of Sovereign Immunity

The Loan Authority argues that it qualifies as an arm of the State of Oklahoma and, as such, enjoys immunity from suits brought against it in federal court. Having invoked Eleventh Amendment immunity, it bears the burden of proving that it acts as a state agent or instrumentality. Accordingly, the Court must apply the Eleventh Circuit's four-factor test to determine whether federal judicial power extends to Abellard's suit against the Loan Authority.

First, courts consider how state law defines the relevant entity. The statute creating the Loan Authority explicitly states that it is "an agency of the State of Oklahoma." Okla. Stat. tit. 70, § 695.3. And in legal opinions dating back to 1980s, Oklahoma courts and the Oklahoma Office of the Attorney General have repeatedly referred to the Loan Authority as a state agency. *See, e.g., State ex rel. Oklahoma Student Loan Auth. v. Akers*, 900 P.2d 468, 470 (Okla. Civ. App. 1995) ("[The Oklahoma Student Loan Authority] is a state agency, operating under the trust authority of statute."); 15 Okla. Op. Att'y Gen. 481 (1983) ("[T]he State, through an agency (Oklahoma Student Loan Authority), [provides] student loan funds to qualified students.").

4

Furthermore, the Eleventh Circuit explained that where, as here, "the budget of an entity is submitted to the state for approval, this suggests that the entity is an agency of the state." *Harden v. Adams*, 760 F.2d 1158, 1163 (11th Cir. 1985). Therefore, this factor supports the proposition that the Loan Authority qualifies as an arm of the State.

Second, the Court must evaluate the degree of control the State of Oklahoma maintains over the entity. The Oklahoma Student Loan Act states that the Loan Authority's governing body shall consist of five trustees appointed by the Governor with the advice and consent of the Senate. *See* Okla. Stat. tit. 70, § 695.4. The Governor has the power to remove trustees for cause. *Id.* Additionally, before the Loan Authority can issue bonds, it must obtain approval from the State's Attorney General. *See* Okla. Stat. tit. 70, § 695.3. Because the State appoints the Loan Authority's governing body and retains ultimate power over its ability to issue bonds, the "control" factor suggests the Loan Authority enjoys immunity from suit in federal court. *Manders v. Lee*, 338 F.3d 1304, 1321 (11th Cir. 2003) (where state statute outlined sheriffs' responsibilities and authorized the State's Governor to discipline and suspend sheriffs, the court held that the "control factor [] weighs heavily in favor of [the Sheriff's] entitlement to Eleventh Amendment immunity").

Third, the Court considers the entity's source of funding. By law, the Loan Authority must "submit a budget for the next fiscal year to the Governor, President Pro Tempore of the Senate, and the Speaker of the House of Representatives." Okla. Stat. tit. 70, § 695.21. The Eleventh Circuit has held that where an entity must submit its budget to the legislature, that entity qualifies as "an arm of the State because the State controls its fiscal life." *Miccosukee Tribe of Indians of Florida v. Florida State Athletic Comm'n*, 226 F.3d 1226, 1233 (11th Cir. 2000).

Abellard attempts to distinguish this case, pointing out that the Loan Authority does not require state funding because its loan servicing operations produce enough revenue to pay all of its expenses. But as the Eleventh Circuit has already held, a self-sufficient entity still qualifies as an arm of the State where the State controls the entity's fiscal life. *See id.* at 1520–21 ("Even

5

though the Park Authority can raise money through the issuance of bonds and from the operation of Jekyll Island State Park, its fiscal life is controlled by the State [because] its budget is submitted to the General Assembly."). Because state law requires the Loan Authority to submit its budget to the Governor and legislature, the State controls its fiscal life; and because the State controls its fiscal life, the Loan Authority's self-sufficiency does not preclude it from qualifying as an arm of the State. Thus, the "funding" factor weighs in favor of finding that the Loan Authority qualifies as an arm of the State of Oklahoma with immunity from suit in federal court.

Finally, the Court considers who would bear responsibility for judgments against the Loan Authority. To be sure, the Oklahoma Student Loan Act notes that the State does not guarantee bonds or loans issued by the Loan Authority. Okla. Stat. tit. 70, § 695.9. In the absence of a negative balance, therefore, the Loan Authority would presumably assume responsibility for any judgment rendered against it.[4] As a state agency and public trust, the Loan Authority generates all of its revenue for the benefit of the State of Oklahoma, so any judgment against the Loan Authority would be satisfied with public resources. *Fouche v. Jekyll Island-State Park Authority*, 713 F.2d 1518, 1520–21 (11th Cir. 1983) (where an entity serves a public purpose, "its profit-making enterprises do not alter its public character"). In a similar case, the Eleventh Circuit held that a self-supporting entity qualifies as an arm of the state where "a judgment would be paid out of current funds." *Fouche*, 713 F.2d at 1521. Therefore, this factor supports the conclusion that the Loan Authority operates as an arm of the State.

In short, all four factors indicate that the Loan Authority is an arm of the state for purposes of the Eleventh Amendment. As such, the Loan Authority cannot be sued in federal court absent a waiver of its sovereign immunity. Because the Loan Authority has not waived its immunity, the Court lacks jurisdiction over this matter and must dismiss Abellard's case.

---

[4] Notably, Eleventh Circuit precedent suggests that if the Authority had insufficient funds to pay a judgment, the state would bear responsibility for the debt. *See Miccosukee Tribe*, 226 F.3d at 1234 ("[B]ecause the Florida Commission submits its budget to the Florida legislature for approval, the state would be responsible for the Commission's debts, such as court judgments.").

6

### III. Conclusion

For the reasons discussed above, it is ADJUDGED that Defendant's motion is GRANTED and the case is DISMISSED.

DONE AND ORDERED in Chambers at Miami, Florida, this 29th of January 2018.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record